[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 26, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15372
Non-Argument Calendar
_____

D. C. Docket No. 04-10102-CV-SH

THOMAS GEORGE HYLAND,

Plaintiff-Appellant,

versus

DANNY L. KOLHAGE,
RUTH THURSTON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 26, 2008)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Thomas George Hyland, a state prisoner proceeding pro se and in forma pauperis, appeals the district court's order denying joinder of a Florida circuit court judge as a defendant, denying re-joinder of another defendant, and dismissing his complaint brought under 42 U.S.C. § 1983 for failure to state a claim upon which relief could be granted.

## I.

In October 2004, Hyland filed this § 1983 action against Danny L. Kolhage, Clerk of the Circuit Court of Monroe County, Florida, and Ruth Thurston, a deputy clerk of the circuit court, alleging violations of his due process rights. Hyland's complaint alleged that on February 3, 2004, Judge Wayne Miller, a Florida circuit court judge, sentenced Hyland to two years probation on a felony "petit theft" charge. Thurston was the deputy clerk in charge of taking the minutes of the court that day. Hyland alleged that the original court minutes for the sentence hearing showed that Judge Miller ordered that Hyland be held in custody until there was a bed available in the "Keys to Recovery Program," an in-patient treatment program. According to Hyland, in April 2004, it was brought to the clerk's attention that in order for the court's sentence regarding the Keys to Recovery Program to be sufficient, the minutes would have to state "complete Keys to Recovery."

Hyland alleged that Thurston illegally altered the minutes to include the

2

condition "Complete Keys to Recovery," which resulted in a special condition of probation being entered that was not ordered by the sentencing judge. According to Hyland, no one ever attempted to officially amend or modify the minutes, and the court never sentenced him to complete the Keys to Recovery program. Hyland alleged that Thurston "negligently" added the additional condition, but he also claimed that it was not "just an oversight or a failure to maintain records, but deliberate, affirmative, operational action, void of judgment or discretion . . . by private agenda." His complaint alleged that because of Thurston's actions, he was forced to spend time in "illegal restraint," and the Department of Corrections used the altered court minutes to imprison him for failure to complete the treatment program.

The district court dismissed the suit pursuant to 28 U.S.C. § 1915 for failure to state a claim. The court concluded that Hyland had failed to allege any personal wrongdoing by Kolhage, and that public officials in supervisory positions cannot be held vicariously liable for acts of their subordinates in a § 1983 action. The court also concluded that Hyland's claims against Thurston should be dismissed because she was entitled to qualified immunity and Hyland had failed to allege deliberate indifference.

On appeal, this Court affirmed the district court's dismissal with respect to

3

Kolhage. However, we vacated and remanded the district court's dismissal of Hyland's claims against Thurston because Hyland had alleged in his complaint that Thurston had acted with deliberate indifference and in bad faith. As a result, Thurston could not assert qualified immunity as a defense.

On remand, Hyland filed an amended complaint, repeating the claims against Thurston and adding additional claims against Kolhage. Hyland's amended complaint alleged that in April 2004, he wrote to Kolhage to make him aware of the alteration of the court minutes and requested that Kolhage withdraw the altered minutes. According to Hyland, Kolhage did not respond to Hyland and remained deliberately indifferent to Hyland's illegal restraint. Hyland also alleged that Kolhage had a duty to investigate by alleging that if Kolhage had acted "lawfully and ethically," then Hyland would not have been injured. Finally, Hyland alleged that Kolhage had a duty to correct the altered court minutes.

Kolhage filed a motion to dismiss Hyland's claims against him, which the district court granted. The court decided that the amended complaint was still an attempt to hold Kolhage vicariously liable for Thurston's actions, which is not permissible in a § 1983 action.

Hyland then filed a proposed second amended complaint, along with a motion for joinder of Judge Miller as a defendant. The complaint was a copy of

4

his first amended complaint with a few additional allegations. Hyland alleged that Judge Miller had "subversively directed and caused" the unlawful alteration of the court minutes by directing Thurston to alter the original court minutes to reflect that Hyland was to complete the Keys to Recovery Program. According to Hyland, Judge Miller knew that he had not orally pronounced such a condition when he sentenced Hyland. Hyland alleged that Judge Miller violated his due process rights by instructing Thurston to alter or amend the court minutes. Hyland's complaint further alleged that Judge Miller did not have subject matter jurisdiction over Hyland's case when the minutes were amended, so Judge Miller was not protected by judicial immunity. Hyland sought compensatory and punitive damages from Judge Miller.

Hyland also filed a motion to re-join Kolhage as a defendant, arguing that he had raised a valid § 1983 claim against Kolhage in his second amended complaint. Specifically, Hyland argued that he had sufficiently alleged that Kolhage had a duty to investigate his complaints, but remained deliberately indifferent and failed to do so.

The district court denied Hyland's motion to join Judge Miller as a defendant on the ground that he was entitled to absolute judicial immunity. The court also denied Hyland's motion to rejoin Kolhage as a defendant because,

5

despite his insistence to the contrary, Hyland was still attempting to hold Kolhage liable as a supervisor, which is not a valid basis for a § 1983 action. Moreover, according to the district court, Hyland pointed to no authority that imposed a duty on Kolhage to investigate Hyland's complaints. The district court finally dismissed the remainder of Hyland's second amended complaint, taking judicial notice of Hyland's state criminal records, and concluding that throughout his state court proceedings, Hyland had acknowledged that he was sentenced to complete the Keys to Recovery Program. Therefore, the court concluded that his complaint was without merit. Hyland timely appealed.

**II.**

Hyland first contends that the district court erred by denying his motion to join Judge Wayne Miller, a Florida circuit court judge, as a defendant because he was not entitled to judicial immunity when he told Thurston to alter the minutes of Hyland's sentencing hearing. Specifically, Hyland argues that Judge Miller is not entitled to judicial immunity because: (1) Judge Miller's instruction to Thurston was not a normal judicial function; (2) the act occurred outside courtroom or chamber proceedings; (3) no matter involving Hyland was pending before Judge Miller because the case was already on appeal; and (4) the instruction was simply a ministerial act, not a discretionary one.

6

We review the district court's denial of a motion for joinder only for an abuse of discretion. Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002) (citation omitted). "The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." Id. (citation omitted).

We review de novo the district court's dismissal on the basis of judicial immunity. Smith v. Shook, 237 F.3d 1322, 1325 (11th Cir. 2001). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 288 (1991) (citations omitted).

"The Supreme Court has set forth a two-part test for determining when a judge is entitled to immunity from money damages liability when sued under section 1983." Simmons v. Conger, 86 F.3d 1080, 1084 (11th Cir. 1996). First, in order to be entitled to immunity, the judge must have dealt with the plaintiff in his judicial capacity. Id. "[W]hether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his

7

judicial capacity." Mireles, 502 U.S. at 12, 112 S. Ct. at 288 (quotations and alteration omitted).

"If the judge was not dealing with the plaintiff in a judicial capacity, then there is no immunity. If the judge was dealing with the plaintiff in his judicial capacity, however, the second part of the test is whether the judge acted in the 'clear absence of all jurisdiction.'" Simmons, 86 F.3d at 1085 (citations omitted). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356–57, 98 S. Ct. 1099, 1105 (1978) (quotation marks and citation omitted).

According to his complaint, Hyland was the defendant in a state felony petit theft prosecution, and Judge Miller was the state circuit court judge who presided over his sentence hearing and was responsible for pronouncing his sentence on the charge. Florida state courts have the power to correct errors in sentences, including mismatches between a written sentence and the earlier orally pronounced sentence. Fla. R. Crim. P. 3.800; see Simon v. State, 793 So. 2d 980, 981 (Fla. 1st DCA 2001); Brooks v. State, 793 So. 2d 513, 513 (Fla. 2d DCA 2000). Accordingly, a judge's act of altering a written sentence is a judicial act. Even

8

assuming, as we are required to do at this stage in the proceedings, that inserting "Complete Keys to Recovery" was erroneous, Judge Miller's instructions to Thurston to amend the minutes to Hyland's sentence hearing, by its nature, was still a judicial act. See Mireles, 502 U.S. at 12, 112 S. Ct. at 288 ("[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" (citation omitted)).

Moreover, under Fla. Stat. § 26.012(2)(d), circuit courts have "exclusive original jurisdiction" over all felony offenses. As the presiding judge, Judge Miller had jurisdiction over Hyland's sentence hearing and all matters related to it. Fla. R. Crim. P. 3.800(b)(2) provides that a circuit judge has jurisdiction to rule on a party's motion to correct a sentencing error even when an appeal in the case is pending. This shows that Hyland's appeal of his case did not, as he argues, divest the circuit court of all jurisdiction over his sentence. As a result, Judge Miller was not acting in the "clear absence of all jurisdiction" when he directed Thurston to alter the minutes, so he "will not be deprived of immunity because [Hyland alleges that] the action he took was in error, was done maliciously, or was in excess of his authority." Stump, 435 U.S. at 356, 98 S. Ct. at 1105.

Because Judge Miller's actions were taken within his judicial capacity and he did not act in the absence of all jurisdiction, he was entitled to judicial

9

immunity, and the district court did not abuse its discretion when it denied Hyland's motion to join Judge Miller as a defendant.

**III.**

Hyland next contends that the district court abused its discretion by denying his motion for re-joinder of Kolhage as a defendant because his claim against Kolhage was not one involving respondeat superior or vicarious liability. Instead, Hyland argues that his claim was based on Kolhage's failure to investigate the allegation that the minutes had been altered. According to Hyland, the district court erred by concluding that Kolhage did not have a constitutional duty to investigate the allegations because Kolhage took an oath to uphold the Constitution.

As we mentioned above, we review the district court's denial of a motion for joinder only for an abuse of discretion. Swan, 293 F.3d at 1253. The district court denied re-joinder of Kolhage as a defendant because it concluded that vicarious liability is not the basis of a § 1983 claim, and Kolhage had no duty to investigate Hyland's complaints. Nonetheless, "we may affirm the district court's judgment 'on any ground that finds support in the record.'" Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 n.1 (11th Cir. 1999) (quoting Jaffke v. Dunham, 352 U.S. 280, 281, 77 S. Ct. 307, 308 (1957)).

Under the law of the case doctrine, both district courts and appellate courts generally are bound by a prior appellate decision in the same case. Alphamed, Inc. v. B. Braun Med., Inc., 367 F.3d 1280, 1285–86 (11th Cir. 2004). The doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal. Luckey v. Miller, 929 F.2d 618, 621 (11th Cir. 1991). There are three exceptions to the law of the case doctrine where we would not be bound by our prior decisions in a case: "(1) a subsequent trial produces substantially different evidence[;] (2) controlling authority has since made a contrary decision of law applicable to that issue[;] or (3) the law-of-the-case is clearly erroneous and will work manifest injustice if not reconsidered." Culpepper v. Irwin Mortg. Corp., 491 F.3d 1260, 1271 (11th Cir. 2007) (citation omitted).

We have already held that Kolhage could not be held liable for the actions of his subordinate, Thurston, under a theory of vicarious liability or respondeat superior, see Hyland v. Florida, 158 Fed. Appx. 194, 196 (11th Cir. 2005) (unpublished), and Hyland does not argue that one of the exceptions to the law of the case doctrine applies. Therefore, to the extent that Hyland's second amended complaint alleges that Kolhage should be held vicariously liable for Thurston's conduct, that argument is barred by the law of the case. See Alphamed, Inc., 367

11

F.3d at 1285–86.

Moreover, to the extent that Hyland seeks to hold Kolhage liable for failing to investigate Thurston's alleged alteration of the minutes, this argument rests on a theory of supervisory liability. "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Id. (citations omitted).

Hyland has not alleged that Kolhage personally participated in the alteration of the minutes, or that Thurston's alteration of the minutes was any more than an isolated occurrence so that Kolhage should be held liable in a supervisory capacity for Thurston's conduct. Therefore, even if the allegations in his complaint are not barred by the law of the case, Hyland has failed to state a claim against Kolhage. See Brown, 906 F.2d at 671. The district court did not abuse its discretion by

12

denying re-joinder of Kolhage as a defendant.

**IV.**

Hyland finally contends that the district court erred by dismissing his complaint for failure to state a claim upon which relief could be granted because he raised constitutional claims against Thurston, Judge Miller, and Kolhage. Hyland further argues that the district court erroneously found that he agreed that Thurston's alteration of the court records was done upon the express direction of Judge Miller. According to Hyland, he stated a cognizable claim under § 1983 because he demonstrated a causal connection between the defendants' actions and his unlawful restraint in the Keys to Recovery Program.

We review de novo a district court's dismissal for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), using the same standards that govern Fed. R. Civ. P. 12(b)(6) dismissals and viewing the allegations in the complaint as true. See Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). As mentioned above, we may affirm a district court decision on any ground supported by the record. Gaston, 167 F.3d at 1363 n.1.

Court clerks enjoy a "narrower ambit of immunity than judges." Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir. June 1981).[1] Court clerks "have absolute

_____

[1] In our en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down

immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only qualified immunity from all other actions for damages." Id. "Absolute immunity from damages actions applies, only in a narrow range of actions, for clerks of court acting in a nonroutine manner under command of court decrees or under explicit instructions of a judge. Damages will not be awarded for a clerk's actions of this type even if in bad faith or with malice." Williams v. Wood, 612 F.2d 982, 985 (5th Cir. 1980).

As we mentioned above, the district court properly denied joinder of Kolhage and Judge Miller as defendants to this case. The only issue remaining is whether the court erred by dismissing Hyland's claims against Thurston. Hyland's second amended complaint alleges that Judge Miller "instruct[ed] Ruth Thurston, Deputy Clerk, Monroe County Clerk's Office, to insert the words "Complete Keys to Recovery" in the "other" section of [Hyland's] court minutes . . . ." His complaint further alleges that Judge Miller instructed Thurston "not to mark the (then) altered court minutes as 'Amended' and not to notice the parties as to the alteration and not to serve copies" of the amended minutes on the parties.

Taking these allegations in Hyland's complaint as true, it is difficult to imagine a clearer scenario of a clerk acting "under explicit instructions of a judge."

_____

before October 1, 1981.

14

See Tarter, 646 F.2d at 1012. Moreover, Hyland's complaint also alleges that this was not a routine action by Thurston, because Judge Miller explicitly requested that Thurston change the minutes that she had transcribed at Hyland's sentence hearing without notification to the parties. Thurston is therefore entitled to absolute immunity from a suit for damages. See id. Accordingly, the district court did not err in dismissing Hyland's complaint for failure to state a claim for which relief could be granted.

**AFFIRMED**.